**Joe Allen PETTY, Appellant,**

v.

**James L. PETTY, and wife, Marva L. Petty, Appellees.**

**No. 20153.**

Court of Civil Appeals of Texas, Dallas.

Dec. 26, 1979.

Christopher W. Mims, Everett, HeLal & Sharpe, Dallas, for appellant.

Richard A. Beacom, Jr., Greenville, for appellee.

Sandra Hale Adams, Advocacy, Inc., Austin, for amicus curiae.

Before AKIN, ROBERTSON and HUMPHREYS, JJ.

ROBERTSON, Justice.

This is an appeal by Joe Allen Petty, a mentally retarded adult, from the appointment under the Limited Guardianship Act, Tex.Prob.Code Ann. §§ 130A–130O (Vernon Supp.1978–1979), of his parents as guardians over him and his estate, with limited and specific powers. Appellant contends

that the trial court lacked personal jurisdiction because he was not personally served, that his waiver of right to counsel was not knowing and voluntary, that the trial court should not have proceeded without a proper examination report, and that venue was not proper in Hunt County. We conclude that appellant was not properly served with notice of the guardianship hearing and consequently, the court lacked personal jurisdiction over appellant. Accordingly, we reverse and remand to the trial court.

Appellant has been living at the Denton State School since 1965. Recently, personnel from the school advised appellees to apply for limited guardianship of appellant, which they did on March 20, 1979, service being made on personnel of the Denton State School on March 22, 1979. Appellant did not receive this process until after the hearing at which limited guardianship was granted. Appellant appeared at the hearing without counsel, accompanied by his parents and their counsel. After the hearing and upon discovering exactly what had occurred, appellant contacted his present counsel and this appeal followed.

The Limited Guardianship Act is a recent addition to the Texas Probate Code. The language of section 130A is instructive for the application and interpretation of the Act by Texas courts.

> Limited guardianship for mentally retarded persons shall be utilized only as necessary to promote and protect the well-being of the individual, shall be designed to encourage the development of maximum self-reliance and independence in the individual, and shall be ordered only to the extent necessitated by the individual's actual mental and adaptive limitations. A mentally retarded person for whom a limited guardian has been appointed shall not be presumed to be incompetent and shall retain all legal and civil rights and powers except those which have by court order been designated as legal disabilities by virtue of having been specifically granted to the limited guardian.

*Id.* § 130A. We conclude from this that the provisions of the Limited Guardianship Act are to be construed to protect the rights of the mentally retarded person.

A question which is pertinent to this appeal and arises in several guises throughout the parties' briefs is whether an individual for whom a limited guardianship is sought may waive any of his rights as provided by this Act or otherwise. Appellee points out that section 130A contains the statement that "[a] mentally retarded person for whom a limited guardian has been appointed shall not be presumed to be incompetent . . . ," and therefore, he should be competent to waive any right. We conclude, however, that this sentence does not bear on the question of waiver. The legislature, in enacting this Act, undertook to provide a means for protecting a mentally retarded individual in those areas which the individual could not adequately protect himself, but to provide maximum freedom and independence in all other areas. Thus, no presumption of incompetence is to follow a grant of limited guardianship. Indeed, if a subject individual is found to be totally incompetent, the court must dismiss the application for limited guardianship, as full guardianship is then the appropriate remedy. Tex.Prob.Code Ann. § 130H (Vernon Supp.1978–1979). These provisions protecting the subject individual after a determination of limited guardianship would be useless, however, if no protection was provided for the individual prior to the court's determination. *See generally* Tex.Rev.Civ. Stat.Ann. art. 5547–300, § 13 (Vernon Supp. 1978–1979). For example, if it ultimately is determined that the individual is able to understand what it means to have legal representation, then the court may determine that no limited guardianship is required for that purpose, and the individual may obtain or waive counsel thereafter as any other person. On the other hand, the court ultimately may determine that this is an area for which a limited guardian should be appointed. In such a case, what is to be the effect of a prior waiver of right to counsel? Must there be another proceeding in which waiver of those rights will not be

allowed? Such a procedure would be ridiculous and untenable.

We recognize that a difference exists between the proceedings under this Act and a proceeding to declare an individual totally incompetent. Tex.Rev.Civ.Stat.Ann. arts. 5547–40. to –57. (Vernon 1958 & Supp. 1978–1979). In the latter instance, the individual may be totally deprived of his rights to control and manage his property, and thus, appointment of an attorney ad litem is provided by statute. *Id.* art. 5547–43. Until the hearing under the Limited Guardianship Act is completed, the only result which is assured is that all of the subject individual's rights will not be removed. *See* Tex. Prob.Code Ann. § 130H (Vernon Supp.1978–1979). Which rights will be removed and the extent of such action is unknown. Thus, the potential deprivation of rights is nearly equivalent to that in a full guardianship proceeding, and the subject individual should be provided with protections commensurate with such potential deprivation. Therefore, when an action is brought under this Act, the subject individual of that action may not waive any right before consulting with an attorney. Because one of the rights that may not be waived absent counsel is the right "to be represented by counsel," we hold that, absent retained counsel, the court must appoint an attorney for a subject individual prior to the limited guardianship hearing. *See also* Brunetti, *The Right to Counsel, Waiver Thereof, and Effective Assistance of Counsel in Civil Commitment Proceedings*, 29 S.W.L.J. 684 (1975).

Section 130E(c) in pertinent part reads as follows:

The alleged mentally retarded person and his parents, if the parents can be found within this state, or the conservator or any person having control of the care and welfare of the alleged mentally retarded person shall be personally served with citation to appear and answer the application for the appointment of a limited guardian.

We construe this sentence as requiring personal service on the alleged mentally retarded person in all cases. Additionally, as a second step, personal service shall be made on one of the interested parties thereafter listed in that sentence. Here, the trial court found in its findings of fact and conclusions of law that service was made on the Denton State School and that such service was legally adequate to comply with the above quoted section of the Probate Code. While such service complied with the second step of this section, no personal service was made on appellant and thus, proper and complete service, sufficient to invoke the court's jurisdiction, was not made.

Appellee argues, however, that when the alleged mentally retarded person appears at the hearing, he waives any defect in service of process. Tex.R.Civ.P. 120. Nonetheless, an appearance can only be construed as a waiver of personal service if it is knowing and voluntary. *Alvarez v. Alvarez*, 476 S.W.2d 353, 355 (Tex.Civ.App. —Corpus Christi 1972, no writ); *Olton State Bank v. Howell*, 105 S.W.2d 287, 288 (Tex.Civ.App.—Amarillo 1937, no writ). Because of the protections that must be afforded an individual who is the subject of an action under this Act, we hold that a court may find such a knowing and voluntary appearance only after the alleged mentally retarded person has consulted with his attorney. Tex.Prob.Code Ann. § 130G (Vernon Supp.1978–1979). Since appellant had no attorney until after this hearing was held, he could not have knowingly and voluntarily appeared and waived service of citation. This contention, therefore, comes within our holding that the alleged mentally retarded individual may not waive any right until he has consulted with his attorney. Consequently, the trial court was without personal jurisdiction over appellant for lack of personal service, or a knowing and voluntary waiver. *See Texas Alcoholic Beverage Commission v. Wilson*, 573 S.W.2d 832, 835 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.). As a result, we must reverse the trial court's order and remand for a new trial.

A question which the parties raise and which is likely to arise again on re-

mand, and which we therefore address in the interest of judicial economy is what "reside" means as used in the venue provision of this Act. Section 130N of the Probate Code provides that "[a] proceeding for the appointment of a limited guardian of a mentally retarded person shall begin in the county where the mentally retarded person resides or where his principal estate is situated." Appellees rely on the portion of this section providing for venue where the mentally retarded person resides. Residence, as used in venue statutes, is not limited to only one place. In *Snyder v. Pitts*, 150 Tex. 407, 241 S.W.2d 136 (1951), the Texas Supreme Court announced the elements necessary to establish a second residence away from a domicile as follows:

1. A fixed place of abode within the possession of the defendant;

2. occupied or intended to be occupied consistently over a substantial period of time; and

3. which is permanent rather than temporary.

*Id.* at 415, 241 S.W.2d at 140. The presence of these elements, however, will establish residence for purposes of venue regardless of whether a party has previously established where his domicile is. No indication exists in the Limited Guardianship Act that this general rule is inapplicable, and, therefore, we hold that a trial court must determine that these three elements exist before finding that venue is established under this provision of section 130N.

We conclude that the legislative intent to afford protection to a mentally retarded person prior to any determination of a need for limited guardianship is manifestly clear. In order to assure that the legislature's objectives are not thwarted, the Act must be construed to insure that a subject individual is thoroughly apprised of all his rights and the consequences of any action he may take or fail to take. We hold, therefore, that retention or appointment of an attorney for a subject individual is required prior to a hearing under the Limited Guardianship Act, and that consultation with that attorney is an essential prerequisite to waiver by the subject individual of any of his rights, including the provisions of the Act.

Reversed and remanded.